COPY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO
APR 5 1999
CLERK

PAMELA GIDDINGS,

Plaintiff,

v.

No. CIV 99-124 BB/JHG

UNUM LIFE INSURANCE
COMPANY OF AMERICA,
Portland, Maine,

Defendant.

## MEMORANDUM OPINION AND ORDER ON MOTIONS FOR PARTIAL REMAND AND TO DISMISS

THIS MATTER is before the Court on Plaintiff's motion to remand [#9] pendent state claims and Defendant's motion to dismiss [#6] such state claims as being preempted by the Employment Retirement Income Security Act ("ERISA"), 28 U.S.C. § 1001 *et seq.* Responding to Defendant's motions, Plaintiff admits many of her state claims originally filed in State Court are preempted by ERISA and seeks leave to amend her complaint. Having reviewed the pleadings and considered the briefs of counsel, the Court believes it would be most prudent to permit an amendment.

## Discussion

Plaintiff admits that since her State Court case, which was removed by the Defendant, was not designed or intended as an ERISA claim, at least four of her causes of action may be preempted by ERISA. She requests "that the remainder of the State Court Complaint be treated as a claim made under ERISA; or alternatively that Plaintiff be allowed to amend her Complaint to conform to a claim under ERISA for clarification of issues ...." Pl.'s Resp. at 2.

The Tenth Circuit very recently addressed ERISA preemption of New Mexico state claims in *Woodworker's Supply, Inc. v. Principal Mutual Life Insurance Company*, ___ F.3d ___, 1999 WL 125474 (10th Cir. 1999) (attached). In light of the recency of the *Woodworker's* opinion and the fact Plaintiff's original complaint was not intended to advance an ERISA claim, the Court believes an amendment of the complaint is the best procedure as amendments may be permitted to clarify claims, avoid delay, and avoid frustration of disputes on the merits. *State of Tenn. ex rel. Pierotti v. A Parcel of Real Prop.*, 937 F. Supp. 1296 (W.D. Tenn. 1996); *DeFranco v. United States*, 18 F.R.D. 156 (S.D. Cal. 1955).

## ORDER

For the above stated reasons, Plaintiff is GRANTED thirty (30) days from the entry of this order to file an amended complaint. If Defendant believes its motion remains at issue, it should so notify the Court in writing within thirty (30) days thereafter.

Dated at Albuquerque this 5th day of April, 1999.

BRUCE D. BLACK
United States District Judge

Counsel for Plaintiff:

Dennis R. Francish, Albuquerque, NM

Counsel for Defendant:

Travis R. Collier, Lisa A. Chavez, Rodey Law Firm, Albuquerque, NM

FILED
United States Court of Appeals
Tenth Circuit

MAR 10 1999

PATRICK FISHER
Clerk

PUBLISH

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

WOODWORKER'S SUPPLY, INC.,

    Plaintiff-Appellee/
    Cross-Appellant,

v.

PRINCIPAL MUTUAL LIFE
INSURANCE COMPANY,

    Defendant-Appellant/
    Cross-Appellee,

Nos. 97-2226
      97-2232

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV 95-1583 BB/DJS)

Doug K. Butler (Bill E. Davidoff with him on the briefs) of Figari & Davenport, L.L.P., Dallas, Texas, for Defendant-Appellant/Cross-Appellee.

William C. Madison and Gregory D. Steinman of Madison, Harbour, Mroz & Brennan, P.A., Albuquerque, New Mexico, for Plaintiff-Appellee/Cross-Appellant.

Before **SEYMOUR**, Chief Judge, **BALDOCK** and **BRORBY**, Circuit Judges.

**SEYMOUR**, Chief Judge.

# I.

We review the evidence in the light most favorable to Woodworker because the jury found in its favor. *See Webb v. ABF Freight Sys. Inc.*, 155 F.3d 1230, 1234 n.1 (10th Cir. 1998). "[W]e accept the jury's factual determinations as long as they are reasonably based on some evidence or the inferences that may reasonably be drawn from such evidence." *Id.* Under this standard of review, the record establishes the following facts.

At the end of 1993, Woodworker, a manufacturer and supplier of woodworking tools and equipment, was shopping for insurance coverage for its employees. It was dissatisfied with its previous insurer, Washington National, for processing claims inefficiently and inaccurately. Woodworker received bids from several insurance companies, including Principal Mutual, through its insurance broker, Nadyne Shimada.

Woodworker had previous experience with different types of insurance contracts. Washington National had provided Woodworker with a contingent premium contract, also known as a retrospective premium agreement. Under such an agreement, the insurer sets two rates, the preliminary premium and the contract premium. During the course of the year, the insured pays the preliminary premium which is the lower of the two rates. At the end of the year,

although the parties did not sign the retrospective premium agreement until late July 1994.

Unbeknownst to Woodworker, the underwriter of the plan, Melissa Lorek, had serious doubts about the adequacy of the rates. On February 28, 1994, she e-mailed Laura Bullock, the Principal Mutual sales representative on the Woodworker contract:

> We don't feel comfortable with increasing the retro differential past the 20%. We did, originally, look at this as an option. We decided against this because, upon closer examination, the contract rates are already inadequate. . . . We feel we have already been very aggressive with this case and I don't feel comfortable with getting any more aggressive.

Supp. App. at 64. Ms. Bullock responded the following day, "This is completely unacceptable. . . . This is a done deal." *Id.* at 66. Principal Mutual made no further changes to the rates. In a letter discussing contract renewal and rate increases for the following year, Ms. Lorek told Ms. Shimada, "When [Principal Mutual] sold this case last March, [it] knew the rates were inadequate." *Id.* at 68; *see also* Aplt. App. at 766. Prior to that, no one from Principal Mutual had told Ms. Shimada that the rates charged to Woodworker were inadequate.

Principal Mutual also failed to fully disclose certain aspects of the method it used to calculate rates, increasing the likelihood that Woodworker would experience large rate increases and charges in excess of the preliminary premiums. For example, Principal Mutual's method for determining reserves to

ERISA preempts Woodworker's claims against Principal Mutual.[1] The trial court originally dismissed as preempted only those claims arising "out of Principal's alleged failure to provide coverage in September 1995," Aplt. App. at 153, but modified its ruling at trial by holding preempted all claims arising after March 1, 1994, the date the insurance plan commenced. We review the trial court's ruling on ERISA preemption de novo as it involves a question of law. *See Airparts Co. v. Custom Benefits Serv. of Austin*, 28 F.3d 1062, 1064 (10th Cir. 1994).

The plain language of ERISA provides that it shall preempt state laws that "relate to any employment benefit plan," subject to enumerated exceptions. *See* 29 U.S.C. § 1144(a). The Supreme Court has frequently acknowledged the expansive scope of ERISA preemption, *see, e.g., Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138-39 (1990); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98-99 (1983), yet the Court has also noted that this observation provides little aid in actually determining whether ERISA supersedes state law, *see, e.g., New York State Conference of Blue Cross & Blue Shield v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995); *California Div. of Labor Stand. v. Dillingham*, 519 U.S. 316, 335-36 (1997) (Scalia, J., concurring). As the Court noted in *Travelers*:

---

[1] Woodworker does not contend that Principal Mutual's counter-claim against it is preempted, and we do not consider that issue.

> control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) [who] renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) [who] has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002 (21)(A).

This court has identified four causes of action that "relate to" a benefit plan for purposes of ERISA preemption. They involve 1) laws regulating the type of benefits or terms of ERISA plans; 2) laws creating reporting, disclosure, funding or vesting requirements for such plans; 3) laws providing rules for calculating the amount of benefits to be paid under such plans; and 4) laws and common-law rules providing remedies for misconduct growing out of the administration of such plans. *Airparts Co.*, 28 F.3d at 1064-65 (quoting *National Elevator Indus. v. Calhoon*, 957 F.2d 1555, 1558-59 (10th Cir. 1992)).

At the same time, this circuit recognizes that ERISA does not preempt all state law claims. It has no bearing on those "which do[] not affect the 'relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries' as such." *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla. Inc.*, 944 F.2d 752, 756 (10th Cir. 1991) (quoting *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 249 (5th Cir. 1990)). "As a corollary, actions that affect the relations between one or more of these plan

recover benefits under the plan. *Id.* at 1492. As noted above, the allocation of benefits under an employee benefits plan goes to the core of ERISA, and so such claims are usually preempted. *See Airparts Co.*, 28 F.3d at 1064-65.

We find instructive those cases in which an employer sued an insurance professional for misrepresentations that induced plan participation. At least four circuits have held that ERISA does not preempt such claims. *See Wilson v. Zoellner*, 114 F.3d 713, 721 (8th Cir. 1997) ("[W]e hold that ERISA does not preempt [plaintiff's] suit against [an insurance agent] for the Missouri state common-law tort of negligent misrepresentation."); *Coyne & Delaney Co. v. Selman*, 98 F.3d 1457, 1467 (4th Cir. 1996) ("We hold that [plaintiff's] malpractice claim [against the insurance professionals] is not preempted because it does not 'relate to' an employee benefit plan within the meaning of ERISA's preemption provision"); *Morstein v. National Ins. Serv., Inc.*, 93 F.3d 715, 723 (11th Cir. 1996) (en banc) ("When a state law claim involves the reliance on an insurer's promise that a particular treatment is fully covered under a policy, . . . a claim of promissory estoppel is not 'related to' the benefits plan."); *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir. 1990) ("[W]e conclude that a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide

Similarly, Woodworker is suing Principal Mutual with respect to its pre-plan activity in its role as a seller of insurance, not as an administrator of an employee benefits plan. Principal Mutual does not, and cannot, claim that it was a principal ERISA entity before March 1, 1994. Of the four principal ERISA entities, the employer, the plan, the beneficiaries, and the plan fiduciaries, Principal Mutual could only claim to be the last. However, Congress quite logically defined a plan fiduciary in relation to a plan. If no plan exists, by definition plan fiduciaries cannot exist. Consequently, Woodworker's pre-March 1, 1994 claim is best characterized as a claim between an employer and an outside party not affecting relations between ERISA entities, as such. *See Airparts Co.*, 28 F.3d at 1065. That Principal Mutual may have later acted as a plan fiduciary does not alter its pre-plan status. *Cf. Coyne & Delaney*, 98 F.3d at 1471.

Allowing Woodworker's claims to proceed is consistent with Congress' purpose in enacting ERISA, that is, to protect the interests of employees and other beneficiaries of benefit plans and establish uniform standards regulating such plans. Holding insurers accountable for pre-plan fraud does not affect the administration or calculation of benefits, nor does it alter the required duties of plan fiduciaries. *See Wilson*, 114 F.3d at 719; *Coyne & Delaney Co.*, 98 F.3d at 1471. Conversely, were ERISA to preempt such claims, "employees, whom

-13-

F.3d 608, 613-14 (7th Cir. 1995) (holding that insurance company was not a fiduciary as defined by ERISA and citing cases). Moreover, one circuit has indicated that an insurance company may suffer liability in a misrepresentation suit. *See Wilson*, 114 F.3d at 718 ("If Prudential incurs any liability as a result of this suit, it will do so only as the employer of a tortfeasor, and not as a plan fiduciary."). Quite simply, we see no principled basis for distinguishing insurance companies from insurance professionals in this type of action. We hold that ERISA does not preempt Woodworker's pre-plan fraud claims against its insurer, and affirm the district court on this point.

**B.      Admission of Woodworker's Damage Theory**

Principal Mutual contends that Woodworker failed to properly disclose its damage theory prior to trial and that the district court should have excluded its evidence of damages. Principal Mutual raises this claim under two theories: arguing first, that Fed.R.Civ.P. 37(c) mandated exclusion, and second, the court should have granted a new trial under Fed.R.Civ.P. 60(b)(3). We review evidentiary rulings and the disposition of Rule 60(b) motions for an abuse of discretion. *See Howard v. Mail-Well Envelope Co.*, 150 F.3d 1227, 1231 (10th Cir. 1998 ) (60(b) motions); *Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994) (evidentiary rulings under 37(c)). Under this standard, we will not reverse

account for the administrative and other costs incurred by the insurance company.

Rule 37(c)(1) provides:

> [a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) [which govern initial disclosures and required supplements thereof] shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Mid-America Tablewares, Inc. v. Mogi Trading Co.*, 100 F.3d 1353, 1363 (7th Cir. 1996). A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose. *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998). Nevertheless, the following factors should guide its discretion: 1) the prejudice or surprise to the party against whom the testimony is offered; 2) the ability of the party to cure the prejudice; 3) the extent to which introducing such testimony would disrupt the trial; and 4) the moving party's bad faith or willfulness. *See Newman v. GHS Osteopathic Inc.*, 60 F.3d 153 (3d Cir. 1995) (quoting *Bronk v. Ineichen*, 54 F.3d 425, 418 (7th Cir.1995)); *Cf. $9,041,598.68*, 163 F.3d at 252 (enumerating a similar list of factors to determine whether inclusion of last-minute evidence is harmless); *Smith v. Ford Motor Co.*, 626 F.2d 784, 797 (10th Cir. 1980) (applying these four factors to determine whether the district court abused its

We now turn to Principal Mutual's Fed.R.Civ.P. 60(b)(3) claim based on the same facts, and again assume arguendo that Woodworker's failure to disclose was improper. "[B]efore retrial is mandated under Rule 60(b)(3) in consequence of discovery misconduct, the challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 924 (1st Cir. 1988) (emphasis in original). Given Principal Mutual's opportunities to cure any prejudice flowing from Mr. Wirth's testimony, we cannot say with any certainty that Woodworker's failure to disclose substantially interfered with Principal Mutual's ability to proceed at trial. Accordingly, we hold that the district court was within its discretion in denying Principal Mutual's Rule 60(b)(3) motion, and we decline to grant a new trial on this basis.

C.  **Sufficiency of the evidence**

Principal Mutual contends that Woodworker presented insufficient evidence to support the jury's finding on the claims for violations of the New Mexico Unfair Practices Act, the Unfair Insurance Practices Act, fraudulent inducement, and damages. We view the evidence in the light most favorable to Woodworker, upholding the verdict if the record reveals sufficient evidence to support it. *See Acrey v. American Sheep Indus. Ass'n*, 981 F.2d 1569, 1572 (10th

Principal Mutual did not disclose its method for deciding whether to add a surcharge to the preliminary premium or increase annual rates. Evidence in the record shows that had Woodworker had access to that information, it would not have contracted with Principal Mutual. We therefore hold sufficient evidence supports the UPA and UIPA claims.

*2.     Fraudulent Inducement*

Under New Mexico law, the elements for fraudulent inducement are 1) a misrepresentation of fact or failure to disclose a material fact; where 2) the falsity was known to the maker or where the representation or concealment was reckless; 3) the maker acted with the intent to deceive and to induce the other party to act in reliance; and 4) the other party actually relied on the representation or concealment. *See Lotspeich v. Golden Oil Co.*, 961 P.2d 790, 792 (N.M. Ct. App. 1998); *see also Krupiak v. Payton*, 561 P.2d 1345, 1346 (N.M. 1977). A party has the duty to disclose if he knows that the other party to a contemplated transaction is acting under a mistaken belief, or if he has superior knowledge not within the reach of the other party. *Krupiak*, 561 P.2d at 1346.

Woodworker presented evidence that supported its fraudulent inducement claim. First, as discussed above, Principal Mutual had superior knowledge about its calculation methods for the underrated premiums it had offered Woodworker.

-21-

*Snell v. Cornehl*, 466 P.2d 94, 95-96 (N.M. 1970); *Montoya v. Moore*, 422 P.2d 363, 365 (N.M. 1967); FOWLER V. HARPER ET AL., 2 THE LAW OF TORTS § 7.15 (2d ed. 1986); *see also* 37 AM. JUR. 2D. *Fraud and Deceit* § 338 (1968). Because sufficient evidence existed to support the damage award, we uphold it.

### III.

Woodworker raises several issues in its cross-appeal which we address in turn.

### A. Punitive damages

Woodworker contends the district court erred in refusing to submit the issue of punitive damages to the jury. After both parties rested, Woodworker requested that evidence pertaining to punitive damages be admitted. The district court denied the request, finding insufficient evidence to submit punitive damages to the jury. Aplt. App. at 1144-1145.[5] We review this question of law de novo, viewing the evidence in the light most favorable to Woodworker. *See Oja v. Howmedica, Inc.*, 111 F.3d 782, 792 (10th Cir. 1997).

---

[5] Later, the district court noted the compensatory damage award alone was sufficient to achieve the underlying policy rationale of awarding punitive damages, that is, to encourage private citizens to undertake this type of litigation. Aplt. App. at 201.

inducement, and we have held that Woodworker presented sufficient evidence to support such a finding. Under these circumstances, New Mexico law requires an instruction on punitive damages, if requested. *See, e.g., Gilmore*, 961 P.2d at 184. Because substantial evidence supports the jury's finding of fraudulent inducement, we have no choice but to order a new trial on punitive damages.

**B.      Treble damages**

Woodworker argues that the district court also erred in refusing to treble its damage award. The New Mexico Unfair Trade Practices Act provides that "[w]here the trier of fact finds that the party charged with an unfair or deceptive trade practice . . . has willfully engaged in the trade practice, the court *may* award up to three times actual damages." N.M. STAT. ANN. § 57-12-10 (B) (emphasis added). The statute specifically makes the awarding of treble damages a discretionary act. We therefore review the court's decision not to award treble damages under an abuse of discretion standard. *Cf. Lam, Inc. v. Johns-Manville Corp.*, 668 F.2d 462, 476 (10th Cir. 1982) (reviewing for abuse of discretion an award of treble damages and attorney's fees granted under statute providing the court "may" award successful party such fees).

Here, the jury expressly found that Principal Mutual's conduct was willful, so the district court had the option to grant treble damages. However,

## D. Attorney's Fees and Costs on Appeal.

Woodworker also argues that it is entitled to attorney's fees and costs on appeal. The New Mexico Unfair Trade Practices Act mandates an award of costs and attorney's fees to prevailing plaintiffs. N.M. STAT. ANN. § 57-12-10 (C). The New Mexico Supreme Court has ruled that this provision applies to costs and fees incurred on appeal as well as at trial. *See Hale v. Basin Motor Co.*, 795 P.2d 1006, 1013-1014 (N.M. 1990). Woodworker is therefore entitled to such fees. On remand, the district court should award Woodworker attorney's fees for litigating this appeal.

## IV.

We **REVERSE** the district court's denial of punitive damages and **REMAND** this case for a new trial on that issue. We **AFFIRM** on all other issues.